Good morning, Your Honors. May it please the Court, my name is Mary Ann Dugan. I represent Western Radio and Autotel in these appeals. The Court has ordered that for purposes of oral argument, the cases are consolidated. The overlapping issue is the Bivens, the legal issues regarding the Bivens claims. As we've briefed in all four of the appeal briefs, the courts have consistently allowed Bivens claims to proceed when they allege First Amendment retaliation and or equal protection. May I interrupt you for a moment? Yes. Because I had a question about the Bivens action in the Autotel case. I noted that the Bivens action was dropped in the Second Amended Complaint. So it was in the First Amendment complaint, and then the Second Amended Complaint no longer included them. And under our decisions in Sacramento Coca-Cola Bottling Company and London v. Coopers & Librand, then the amended complaint entirely replaces the first one and essentially makes the first one nonexistent. And so I'm wondering whether in the Autotel case the Bivens action is even appropriately before us. Yes, Your Honor. The court actually dismissed the Bivens action on a motion to dismiss. And then later the ‑‑ there was a second motion for summary judgment on the remaining claims. So the court's decision granting the motion to dismiss is in the E.R. at page 12. But you didn't appeal the motion to dismiss. You then amended your complaint, and then the Second Amended Complaint had dropped the Bivens action. Is that ‑‑ Under the one-judgment rule, Your Honor, I was required to wait until the end of the case to appeal all interim decisions. And we did appeal the motion to dismiss in our opening brief. We included that. And the court ‑‑ this court ‑‑ I can submit a supplemental brief if you wish, but this court has held that the notice of appeal simply needs to state that you're appealing from the final judgment. But I couldn't find a case, and maybe you're aware of a case, where once you've then created a Second Amended Complaint, which doesn't have that claim, that that then can be considered by the court. In fact, the London case seems to say the opposite. So do you have a case on point that I should look at? Not off the top of my head, Your Honor, and I haven't read the London case. But my understanding from what you've told me is it doesn't sound like that's a case where there were some claims or one claim that was dismissed. The Title VII claim was dismissed, and then the parties did a Second Amended Complaint. They briefed the Title VII claim, but the court said they couldn't hear it. But if you're not familiar with that, why don't we move on? And let me ask you about the Bivens claim in connection with, at least with the Western Radio case. Why — I couldn't understand why the APA wouldn't be an appropriate alternative existing remedy for Bivens. Well, Your Honor, as the Supreme Court explained in Carlson v. Green, first of all, that was a case involving the Federal Tort Claims Act. But the reasoning is equally applicable. That case was from 1980, and the Supreme Court held that the FTCA was not an adequate remedy for the constitutional violation. And there were three reasons the court gave. Number one, when the Federal Tort Claims Act only allows claims against the agency itself, and the APA, similarly, only allows claims against the agency itself, the Carlson court said that the deterrent act of suing individuals is an important factor for allowing a Bivens claim. Second, there are punitive damages available in a Bivens claim and not in the Federal Tort Claims Act nor in the APA. And third, the Carlson court pointed to the availability of a jury trial in a Bivens claim, which is not available either in the FTCA or APA. Now, there was the Wilkie case, and that's the case that the district court relied on. That's Supreme Court from 2007. But in that case, that was a Fifth Amendment taking, and the court simply held that the plaintiff in that case had not stated a Bivens claim because the government's motivation for pressuring the plaintiff in that case was acceptable. The motivation was they wanted to get this easement from Mr. Wilkie. Here, and in Wilkie, the court explicitly distinguished from First Amendment retaliation cases and said that in those cases there's clearly an impermissible motive. And so the Supreme Court basically said, though it was dicta because it wasn't before them, but they said that a First Amendment retaliation claim can proceed under agency action as the process by which the person was retaliated against. To my knowledge, there is not a case from the Ninth Circuit or the Supreme Court that explicitly says that a Bivens claim is appropriate where the action alleged by the agency is agency action that could also constitute an APA claim. But Wilkie explicitly distinguished from that type of case and said this is not a retaliation case. The courts have also said that in the Carlson case, the court also said that the – when there's action by the Federal government that would constitute a civil rights claim under – against a State government, had it been a State government acting, then a Bivens claim must be allowed because there should be – the Federal government should be subject to the same liabilities as State actors. And that's in Carlson at page 22. I'm sorry to interrupt the flow of your argument. Yes. Go ahead. Could you back up for just a moment and give me the page site in Wilkie where in dictum you say they save out the question of a First Amendment retaliation claim? Yes, Your Honor. It's the Supreme Court page site 2601. It's a very lengthy quote that's in our opening brief at page 30 to 31. The reason I put the entire quote in is because it took the court – it, frankly, took the court three paragraphs to explain that it was distinguishing from retaliation cases. The court said the – Wilkie's claim against the Bureau fails to fit the prior retaliation claims, and then they go on to explain the importance of looking at the motivation and the what-for questions, as they put it. All agree that the Bureau's employees intended to convince Robbins to grant an easement. Unlike punishing someone for speaking out against the government, trying to induce someone to grant an easement for public use is a perfectly legitimate purpose. The what-for question thus has ready answer in terms of lawful conduct. So that's – Okay. I've got it. Thank you. Okay. The district court also – in Western Radio also erroneously stated that Bivens' liability is not appropriate where the plaintiff's underlying claim is akin to a common law tort action, and that's in a record ER 12. But that's simply incorrect. As I explained in Carlson, the court said that, you know, something can be a tort where you might have a federal tort claims act remedy, but that does not preclude you from having a constitutional remedy under Bivens in the federal court. But wasn't Carlson, though, looking at the fact that the FTCA was parasitic on state law? That seemed to be the gravamen of their concern about FTCA. Whereas the APA provides a uniform national standard. That's true, but ironically, it was actually based on the Oregon APA, and we haven't briefed that, but it did not spring full-blown from the federal government's head. Does that make a difference? I mean, it's not specific to each state. It's – APA has its national remedies. It seems like Carlson is distinguishable on that ground. Your Honor, neither party has briefed that issue. Again, I would be glad to do a supplemental brief. My memory is that in Carlson, the court focused on the three factors that I enumerated, all of which go to the nature of the FTCA, not to the nature of the state tort remedy. If you filed in state court against a state actor in tort, you would have a jury trial. One of the factors in Carlson for allowing a Bivens claim was the lack of the right of a jury trial, for example. So with due respect, Your Honor, I don't believe that that's – was relevant to the court's inquiry in Carlson. I would also like to note that the district court – actually, neither district court in either of these cases addressed whether plaintiff had stated a prima facie claim against the government. The Western Radio Court did come close by looking at – at least looking at the alleged facts, because it was on summary judgment. In Autotel, there was no discovery. It was a motion to dismiss. And the court simply held that as a matter of law, there was no right to a Bivens claim. Could I interrupt the Bivens discussion just to ask you about – we had asked you to be prepared to discuss on the Frenchman's sunrise right-of-way issue – Right. – where – what the status was with the – the appeal. And we now have the IBLA decision, I guess, that you provided to us. So given that we now have that decision, which is BLM's final decision, what do we do with that? Do we need to remand it back to the district court to consider that for that particular issue? That's not my understanding, Your Honor. Having practiced in the administrative law context for many years, especially in the BLM context, in Darby v. Cisneros, the court held that the plaintiffs were not required to exhaust their administrative remedies to the IBLA. And so what – Well, you didn't. You triggered the agency procedure, and I think Puget Sound case says once you've done that, that makes your – the underlying decision non-final. So it seems like you non-finalized the decision, and then now we have a final decision at the agency. Again, not an issue that was briefed by the parties. I see your point. I think that the appropriate remedy on remand would be a supplemental complaint. It would not change the nature of the claim because the appeal was denied. And I don't – I don't remember the Puget Sound decision. I understand what you're saying. I guess without having read it and briefed that issue, I'm a little bit at a loss to know what the stance is on appeal. It requires further thought, I guess, on that one. You may be right that the court is divested of jurisdiction over that issue, though I haven't ever seen that happen before. So I guess, again, if we have a supplemental brief, I'll pile all that in there. The – so I talked about the retaliation issue in Vivens. And I'm sorry to focus just on Vivens, but I think – I mean, that's where the overlap is in these two cases. The other issues are a little more – well, they're very fact-specific and I think they were well addressed in the briefs. And so if the court wishes to move to that – those issues, I'd be glad to. But in Vivens – under the Vivens claims, there's the retaliation claim and then – I'm sorry. There's the First Amendment retaliation claim and then there's the due process class of one claims. The retaliation claim – can you go over – what is it that was chilling to his – what actions were taken that would be chilling to a reasonable person? I saw that there were some mean e-mails, maybe, but I wasn't sure what you were pointing to to support that claim. Well, you know, in Western radio, the record's much more well-developed and it's a much longer history of retaliation. The record ER – something like 45 to 63 is Mr. Oberdorfer's declaration regarding the long history of his relationships with the Forest Service in Oregon and how he started out with a very good relationship with them for several years starting in the 80s, then in the 90s when he started filing administrative appeals and complaining to them that they were not complying with the law and he started suing them and there's, you know, five Western radio decisions. He noticed a pattern of what he considered to be retaliation, for example. There's a temporal relationship, but is there any evidence of an animus or improper motive on the part? Yes, actually, there's – you know, we did have a couple of e-mails in discovery where the – well, there was also – Mr. McMillan told Mr. Oberdorfer, you know, we've developed a policy that if you yank our chain, we'll yank yours, Mr. Oberdorfer. And then when he – when Western radio lost a case at the Ninth Circuit, there were e-mails saying this should stuff a sock in the big mouth of Oberdorfer. You know, people aren't going to come out in e-mails and say, boy, we should really retaliate against this guy. And the Ninth Circuit has recognized that repeatedly, that it's almost impossible to locate direct evidence of retaliatory animus. But here we have, you know, a pattern and some pretty nasty statements against Mr. McMillan. Just focusing on those two statements for a moment, you yank our chain, we'll yank yours, this should stuff a sock in, I can understand how someone who has been sued, whether the government or anybody else, might occasionally say things in irritation. I don't think the federal government employees are necessarily any different from anybody else. That standing alone does not strike me as very strong evidence of retaliation. If you sue me, I'm going to defend myself. That's right. And standing by itself, I would agree with you. But here, as soon as he started fighting against the government, they started yanking his chain. They canceled the contract that they had with him for radio service. They started treating, giving Cellular One and Oregon State Police preferential treatment, as is well documented in the declaration, ER 57 to 63. They, sorry, I lost my train of thought. There was a third thing I was going to point out. It'll come to me. Oh, so the side hill antenna is this long term night from 1991. Took him 16 years to get approval for this side hill antenna, which is there's a hill. And, you know, you'll see antennas on the top of a mountain. Well, this is an antenna that's on the side of the hill. And the intent is to get far enough away from the other folks to have less interference. It's also less visually impactful. So it's actually a benefit to society. And it was explicitly allowed in the site plan for Grey Butte. And yet they just dragged it along and dragged it along. And it would be on the schedule of proposed actions. Then it would fall off. And, you know, so every time he sued them, they would take some sort of action against him. And back in the 80s, when he was not suing them, that was not the case. Now, in the BLM Autotel matter in Nevada, the way it was pled, he noticed that things were not going well for him there either. What we pled was that we invoked the provision that allows us to say, once we've done discovery, we believe these allegations will be supported by evidence that BLM has been following Mr. Oberdorfer's track record of suing the government and is also retaliating against him. So since that case was thrown out on a motion to dismiss, Your Honors, I think that you have to take that at its word and assume that that's, you know, what would be found if we did discovery. So in Western Radio, the Oregon case, it's not just those two statements. There's animus. There's a pattern of retaliation after a period of good relations. Those are two key factors that this Court has allowed to show as circumstantial evidence of retaliation. The evidence of the good relations is Mr. Oberdorfer's declaration. Was there any other evidence of that? Well, I mean, it's hard to show a proven negative, but there were no adverse actions against him during that earlier time. And so when he started then filing the administrative appeals and making requests, was he making requests that were all granted during that prior period? Is that? No. No. You know, he filed administrative appeals, which then led to litigation because he was not successful in his administrative appeals. So he started filing suit. Now, you know, this wasn't raised by the parties, but in a prior case, the government argued, well, look, he's not chilled. But this Court and the Supreme Court has said, you don't look at whether this particular litigant's First Amendment speech was chilled. You look at whether a person of ordinary firmness would be chilled. And the specific things that would be chilling are the e-mails, I think there was a remark by Mr. McMillan in 1997, and the SOC e-mail, and what else? The denial of the side hill permit for 16 years, the preferential treatment. But they ultimately did deny it, right? And you're saying that that was done in retaliation, or was that? Well, they ultimately granted it. In fact, they would have had no grounds to deny it. It was allowed in the site plan. And yet they took 16 years to process his application and approve it. So it's a delay. Because I was looking for the sort of the sequence of events, and it wasn't clear about whether Mr. Obrey or Mr. Western was following up on that. Okay.  He was definitely following up on it. In the opening brief at 6, probably page 5, actually, all the way to page 6 to 12 of the opening brief discusses the chronology. This lawsuit was filed in 2004 in September. And as explained on pages 6 and 7 throughout 1998 to 2002, 2003, very, very vigorously in 2003, Mr. Oberdorfer was saying, look, you need to process my application. What is going on? What do I need to give you? What more do you need? Do you need more paperwork? And he was just buffeted around. They changed personnel on him. They asked for new information, which he had already given them, as he explained to them. And then he would give it to them over again. And yet it still took until 2007 for them to process the application. In addition, there was a pattern of treating his competitors preferentially. And I'm not going to go into the details because they are laid out, ER 57 to 63, where the Forest Service was actually seeking out Cellular One and saying, hey, why don't you do this and we'll give you this permit. And these were at locations where Western Radio was trying to do business and compete against Cellular One, a much larger company. So it's not just the e-mails. We're not suing over two e-mails. We're suing over this pattern of retaliation. I see that I'm just about out of time, relatively speaking. I have seven minutes left, and I would like to retain that for rebuttal. Thank you. Let's hear from the other side, and you'll get a chance. Thank you. May it please the Court. My name is Kevin Danielson for the United States. This Court has consolidated the argument in both of these cases. I would like to address the Bivens action as it applies to Western Radio and have Mr. Wenthe perhaps supplement any additional Bivens arguments and then address the issues in his case. Okay. You anticipate roughly what kind of time split? Maybe 15 or 20 minutes for me, something like that, depending on how many questions I get from the Court. In this case, the plaintiff wants you to create a Bivens action arising out of the delay of processing a side hill application. This Court should not do that for two reasons. One is the two-part test under Wilkie v. Robbins doesn't allow it. And the second is the facts do not support it. Let me back up and do this a little bit more in the abstract, and then we'll get down to the detail of the particular case. What if the question is, is there a Bivens action available when the claim is retaliation for exercise of First Amendment rights? I think that there is a constitutionally protected action. The Supreme Court has never allowed a Bivens action under those circumstances. The Court has said — Wait a minute. You said, but what do you mean by there is a constitutionally protected action? The courts have said that every constitutional infraction does not rise to the level of a Bivens action. So there can be a violation of the Constitution by a Federal employee which does not rise to the level of a Bivens action. Yeah, well, I understand that. But what do you do with that fairly long excerpt from Wilkie that pretty strongly suggests that if it is retaliation for exercise of First Amendment rights, that it seems to me the Court goes to such effort to distinguish what's going on in Wilkie from that hypothetical case of First Amendment retaliation that fairly strongly suggests that there's a Bivens action for First Amendment retaliation by a Federal official. What do you do with that language in Wilkie? I think you have to apply the two-part test that follows that language. For example, in Bush v. Lucas, where you have the NASA employee who was fired for criticizing NASA, he was demoted and he brought a Bivens action. And the Supreme Court said because of the civil service reform procedure available to him, it would not rise to the level of a Bivens action because he had an alternate remedy. So the Court has recognized in Bush v. Lucas that there is a First Amendment violation by Federal employees. It does not necessarily arise to a Bivens action. And what is the alternative remedy here for the alleged, let's assume for the moment for the purpose of the question that it's true, First Amendment retaliation? Well, under Wilkie v. Robbins, the first step is to see if there is an alternative. I know, and I'm asking you what is the alternative? Well, it's clearly the Administrative Procedure Act. And how does that help somebody who has been retaliated against by the agency? The agency, I'm hypothesizing for the purpose of this question, is doing acts that would be permitted but for the fact that they are retaliatory. That is to say, the APA gives the agency a huge amount of discretion, as we know, to delay, to grant, and so on. And the APA protects the applicant or someone dealing with the government to a certain extent. But the agency has enormous freedom. So let's assume that the agency is doing something that it would be allowed to do under the APA, but it has bad animus, animus being I'm retaliating. So what then? The alleged retaliation in this case is that they delayed processing this application. Correct. And the APA clearly says provides a remedy for an agency that is unduly delayed or unlawfully withheld. Well, but as you know, I'm assuming you deal with APA cases all the time, the agency can get away with an extraordinary amount of delay under the APA. But it offers the plaintiff an alternative remedy. It allows him to bring suit for that unreasonable delay. And we see these cases from time to time where the party is suing the government, saying make the decision, and so on. And those cases drag on for years, and usually they are losers. You're saying they are delayed in district court? Is that what you're saying? Well, the cases take a long time, and they usually lose. What I'm saying to you is that while, yes, you do have a right under the APA to government action, it's not a very effective right. And given that, it seems to me that what the complaint is I'm being retaliated against because the agency in the retaliation is delaying action. The agency, consistent with the APA, if that's the only thing we're looking at, can delay successfully a very long time. If you look at the language in WILTI, it talks about any existing alternative remedies. It doesn't say that... In other words, the remedy doesn't have to be any good. Well, in WILTI v. Robbins, the Supreme Court recognized that the plaintiff's patchwork quilt of remedies did not do him any good. I think that's the proper response. And the question is how bad does that remedy have to be before Bivens is allowed to replace it? Well, I think it has to be worse than in this case. Okay. And... Does the remedy which you say the APA provides by allowing suit provide for other punitive damages or jury trial? I'm sorry. Could you say that again, Your Honor? Does the remedy which you say the APA provides by allowing suit for unreasonable delay, does that provide for a jury trial or punitive damages? Absolutely not, Your Honor. Does it provide for compensatory damages? No, Your Honor. And what has the Supreme Court said about that, about whether that's necessary in order to find that the remedy is a reasonable alternative? If I could quote from Bush v. Lucas, which is the First Amendment case brought by the NASA employee. It says, We assume for purposes of decision that petitioners' First Amendment rights were violated by the adverse personnel action. We also assume that as petitioner asserts, civil service remedies were not as effective as an individual damage remedy and did not fully compensate him for the harm he suffered. In that case, they found no Bivens remedy. They recognized that not every constitutional infraction by a federal employee rises to the level of a Bivens action. When is the last time that the Supreme Court found that there was a Bivens remedy? I don't know. I remember there was like a limited number of cases and then that was it. The Supreme Court is only, after Bivens, it's only Davis v. Passman, which is 1979, which was the employment discrimination against the former congressman. And then it was in Carlson v. Green where they found an Eighth Amendment violation for a federal prisoner based on cruel and inhuman treatment, cruel and unusual punishment. It has been since 1980 that the Supreme Court has created a new Bivens remedy. One other point I wanted to make is that in the findings of fact by the court, the individual defendants in this case were not involved until the year 2002. So any of the prior actions taken by the agency or other federal employees are really not relevant to this case because these individual employees, and they are being sued individually for their individual actions, is not relevant. And the plaintiff sued in 2004. So it is a very limited window, and he can't go back to 1997. For example, that one quote out of the brief where it says about yanking the chain, he yanks our chain, we're going to yank his. The plaintiff is recalling that from, I believe, 1997, far remote in time from 2002 and does not apply to these individuals. So based on the other point I wanted to make in addition to the APA is that the Wilkie v. Robbins test cautions the court. It asks the court to hesitate before making a new judicial remedy. In this case, if you created a remedy, it would, any time somebody filed a lawsuit or made a First Amendment claim, it would allow a plaintiff to bring an action against a federal employee for delay in processing it and allege retaliation. The Supreme Court said those kinds of remedies should come from Congress and not from the courts. Let me ask you the question with which Judge Ikuda began the questioning from the other side, and that's with respect to the amended complaint in the Autotel case. The district court, Judge Jones, dismissed with prejudice the Bivens claims and then granted permission to file an amended complaint with respect to the second and third causes of action. The amended complaint with respect to those causes of action was then filed. In your view, are the Bivens claims in Autotel properly before us on appeal? That is Mr. Wenthy's case. I have an opinion, Judge, but it's probably irrelevant. Wait for his answer then. Okay. If the court has no further questions on the Bivens action, I'll sit down. Okay. Thank you. May it please the Court, Counsel, I am Roger Wenthy, representing the government on the Nevada case, Autotel. To start with the question that Your Honor left off with, it has always been my understanding that the final judgment in a case encompasses all interlocutory orders that were entered prior to it, including one dismissing counts of the complaint. And it's never been my understanding that a party waives or abandons a claim by not including it in a later amended complaint after the court has litigated on and ruled that that claim is not valid. Otherwise, the law would be requiring the doing of a futile act, which is to include in the amendment. But you're putting in the complaint the causes of action that have already been dismissed out on the earlier ruling. Exactly. So in other words, in your view then, the Bivens claims in Autotel are in fact properly in front of us, despite their not being included in the amended complaint. That is my view, yes. And I do want to make just a couple of points on those Bivens claims. One directly answers a question that you raised, which is does the APA provide a remedy in this situation? I think one thing that is very important to remember about the APA that distinguishes it from the FTCA is that there is an explicit provision in the APA permitting a court to review agency action on the grounds that it was against a constitutional right. And so counsel could have raised in the APA claims in this case and the other case all of the First Amendment retaliation claims that were raised instead in a Bivens context could have raised them as APA claims. Could the APA claim for violation of a constitutional right give the agency the power to award compensatory punitive and punitive damages? No, Your Honor. And it couldn't give the court that right either. The agency ---- All they could do is issue the license or whatever he was asking for. Yes. And I should point out that since Carlson talked about compensatory and punitive damages in jury trials, the Supreme Court has never relied on the absence of those remedies as giving it the reason to create further Bivens remedies. If one looks at Bush v. Lucas, that remedy under the CSRA did not ---- does not provide for a jury trial or compensatory or punitive damages. Schweiker v. Chalicki dealt with Social Security claims. They do not provide for jury trial compensatory or punitive damages. I think the Supreme Court has gradually walked away from all of those other rationales for Carlson. And I think the only rationale that's left for Carlson, as Your Honor pointed out, is that it was based on the fact that the FTCA is completely dependent on state law for its substantive rules of law. And that varies from state to state. Another point, one other point I just wanted to make is that the FTCA, one cannot bring constitutional claims under the FTCA. One is only limited to those claims under state common law. And so the FTCA gives one no constitutional remedy as the APA explicitly does. Here's something that's puzzling me about the right to various damage remedies against individual federal officers. We know that in certain circumstances, damages are indeed available against individual federal officers despite the possible defense of sovereign immunity. I don't say official immunity. I say sovereign immunity. But we also know, for example, that if a suit were brought against someone whose only job was to pay out benefits, and the claim was for withholding of benefits in violation of due process, that there would be a sovereign immunity defense to the availability of damages against that individual officer. I'm pulling from 11th Amendment immunity, but that's Edelman v. Jordan. And that law kind of goes back and forth between state sovereign immunity and federal sovereign immunity for various forms of damage judgments. What I would be interested in knowing is whether or not a damage judgment would be available against a federal officer for the acts that are alleged here, or whether the federal officer would have a valid defense based on sovereign immunity. Well, I can honestly tell you that's not an issue that I was prepared to deal with today. And I think, truthfully, sovereign immunity by the federal official, I have not understood it to ever be a defense to a Bivens cause of action because those are brought against the individual in their individual capacity. Yes. Well, I don't want to turn this into a federal courts class, but you can't resurrect or create a damage cause of action where one is otherwise not available because of sovereign immunity merely by pleading, quote, in his individual capacity. Or there would be a lot of sovereign immunity law that would be rearranged simply by a pleading device. But I understand you may not be prepared to address this question. Well, in any event, as I say, I do believe that to answer the other question that was raised previously, there is an initial step that one must show that this is a Bivens-type claim, that it is one of the few constitutional violations that are remediable under Bivens. And we have assumed because in the Nevada case, it was decided on a pleading, so all well-pled allegations had to be accepted as true, that indeed a First Amendment retaliation claim was pled. You know, I have to – you may not be prepared for this one either. Sort of the common term applied to causes of action brought under the federal Constitution against state officers for damages, and indeed the common term often applied to Bivens actions is that these are so-called constitutional torts. Right. And there's something in the sovereign immunity law that says if it looks like a tort or is analogous to a tort, then damages might be available against the individual officer. On the other hand, if it's essentially suing for breach of contract against the individual officer or it's breach of an obligation to make certain payments under entitlement programs, well, then sovereign immunity protects the officer even if the officer is named in his individual capacity. This case falls somewhere in the middle. I think it sounds more like a constitutional tort. That is to say, it's some form of wrongdoing, at least that's the allegation. There's not some independent obligation to pay money that they're failing to abide by. The allegation is, at least, they've taken a wrongful act based on impermissible animus to retaliate against the First Amendment. So my guess is that this would be permissible as a damage action under a sovereign immunity analysis. Would or would not? My guess is that sovereign immunity would not protect. I guess this would fall in the category of constitutional tort. I would assume that's a very small class of cases that you would be talking about that would fit within that rubric. My guess is that this case is one of them, but I have to say it's only a guess. Well, the plaintiff, of course, has done what they can to plead this case as a Bivens case. They have obviously used one of the very few rubrics that exist, retaliation for First Amendment rights. That's what they've used. That has traditionally been considered one of the few actions that at least gets you in the Bivens door. But what we've been talking about in this case is that, nevertheless, although that is the type of cause of action that might be raised under Bivens, there are factors counseling hesitation here, particularly the existence of the APA and its provision permitting unconstitutional action to be challenged through the APA review process. So what we're saying is because the APA is there and because all the actions alleged here fall very comfortably within the normal process of reaching final agency action, in other words, we're not dealing here with even the kinds of actions dealt with in Wilkie v. Robbins, the court called death by a thousand cuts, bringing a criminal action and taking coercive action in addition to doing things within the administrative process. Here in both of these lawsuits, we have nothing more alleged than just people sitting at their desk and doing the things that arrive at agency action in the normal course. Or not doing. Or denial of. They're sitting. Well, yes. And to answer that question, you noted that agencies can sometimes delay a very long time. The APA does provide the possibility of injunctive relief. And if a delay goes on too long and there is irreparable harm being suffered by the absence of agency action, and one can imagine that, one can go to district court and seek an injunction if that is absolutely necessary. So there is a remedy available. You don't have to simply sit and wait forever under all circumstances. I want to address just for a moment the APA issues in our case. Two of the four questions deal with the denial of a request for a permit. One was requested to be built in a wilderness study area. The other in a national conservation area. I don't think there's been any showing that it is arbitrary and capricious to deny the building of new radio towers in undisturbed territory in areas that Congress has mandated be protected as though they were a wilderness in the one case, or in which it is mandated protection of the scenic and natural resources of the area in the other case. The granting of Titans Tower was an action that was administratively regular in every respect. And there really is no basis for that one. And then finally the electromagnetic interference issue, which is the delay or unreasonable delay argument. I think the record shows that there was a great deal of accommodation given to Autotel and efforts were made at every step along the way to try to solve its problems. It's simply that Mr. Oberdorfer never could come up with an identification of a source of interference and a measurable amount of interference. And unless you have that, there's really not much the BLM can do to try to coerce someone else to remedy it. And so we believe that in addition to the Norton versus SUA point, that there was no discrete agency action that we were required to take under any of these materials. Even if there were, we never reached the threshold point at which the agency needed to act. I have nothing else. Okay. Thank you. No further questions from the bench? Okay. Thank you. Ms. Dugan. Thank you, Your Honors. First, I want to clarify, there are two types of claims under the Vivens claims. There is the retaliation claim and then there is the class of one claim, which is really quite different. And it's kind of an odd animal, but it was described well in the Squaw Valley development case, which is cited in our briefs, the 2005 Ninth Circuit case. And the court said that a plaintiff can state a class of one equal protection claim if they have been intentionally treated differently from others similarly situated and there's no rational basis for that difference. And even if the agency alleges a rational basis, the plaintiff can try to demonstrate that that's pretextual. Here we haven't even gotten past the rational basis level. And so these cases have been coming along through the Ninth Circuit. Squaw Valley, Serrano's Gas, more recently in September, CARA Partners LLC versus Lashway. Sorry, that was actually a retaliation claim. Lazy Y Ranch versus Barron's, which I mentioned in the 28-J letter. And so it's important that the court recognize that there are two types of claims. There's also two types of improper action that were alleged in the Western Radio case. One was the side hill antenna delay. The other was the failure to enforce the site plan against Slater Communications. As far as the ‑‑ I just wanted to ‑‑ there was a factual point. The 1997 Yank Your Chain statement, that was actually made by one of the named defendants, Mr. McMillan. That's ER 56. This court has a pretty narrow legal issue before it, I think, on the Bivens claims, which is because the district court ‑‑ district courts basically threw these claims out for failure to state a claim that's saying they were precluded. That is the issue that's before the court. Are these claims precluded by the APA? In Carlson, not only did the court look at those three factors, but they also ‑‑ the court also said that to be precluded, there should be explicit substitute remedy that's equally effective. So these are separate issues. Equally effective is where you get the three factors. But is it explicit? Now, here in the APA, Congress did not explicitly preclude Bivens actions when they amended the APA in 1976, three years after Bivens. And so there's no explicit statement by Congress of any intent to keep people from raising constitutional claims against government actors in the federal government who retaliate against people who deal with the administrative system. The district court in the Western Radio case, I think, glossed over the class of one issue because the court said that Western Radio needed to show that the government had acted maliciously or conspiratorially. That's ER 12. And that is not part of the equal protection class of one test. But as I understand it, assuming for the moment that Bivens allows the action, the class of one argument is not that your client falls into some protected class. He's got to win on a rational basis argument. That's right. Those are, you know, those are 101 shots. Those are hard to win. Well, they are. And this Court has ‑‑ they're difficult. I wouldn't ‑‑ I don't know if it's 101. All I know is that the ‑‑ It's probably 1,000. It could be. All I know is that the three times I know of that this Court has addressed them, they've overturned summary judgment and allowed them to go forward. As far as a mandatory injunction, which was suggested by Mr. Winthey, that's an almost impossible test itself to obtain a mandatory injunction ordering the government to do something that it has failed to do. There's very little case law on that. Friends of the Wild Swan is the only case I can think of in the last 10 years where the Ninth Circuit has held that it's proper to have a mandatory injunction for failure to act. As far as the APA claims in Nevada, excuse me, I really think we fully briefed this. On the failure to enforce the site plan regarding Titan, I would just ask the Court to pay careful attention to the nine things the BLM claims it did to remedy the situation. And that's addressed in our reply at pages 8 to 11. None of those nine things were at all effective or even an attempt to be effective. All but one of them were the BLM basically telling Autotel to go work it out with Titan. The one time the BLM actually did something, they showed up with the wrong equipment to measure the interference. And keep in mind, Autotel doesn't have access to Titan's equipment. They can't put the burden on Autotel to prove why there's interference, how much interference, what equipment's causing interference, goes against the site plan. But the record seems to me that numerous tests were performed to try to determine whether there was interference and they could never find it. Well, the one test the BLM did, they said they were going to come back with better equipment. They didn't come back. Autotel did the best it could without access to Titan's equipment to try to figure out what was going on regarding interference. But Autotel has never been allowed to go inspect the equipment and try to figure out what's going on. And the site plan puts the burden on BLM and Titan to try to figure out what's going on. BLM is supposed to shut down Titan until the interference is remedied, and they have not done that. And Titan was allowed this permit without any equipment at the time, without any explanation of what equipment would go in there, and when they moved in equipment without amending their application. And that's the other part of the Titan-related APA claim. Regarding the Frenchman and Black Mountain areas, as we explained in the brief, these are not pristine areas. And Autotel proposed to put equipment in an auxiliary facility in previously disturbed areas that are already, that already have telecommunications equipment approved in them. These are not, he is not asking to go into a wilderness area. The Frenchman area, BLM recommended none of the 10,000 acres be allocated to wilderness. And similarly on Black Mountain. And I believe I'm out of time. Thank you, Your Honors. Thank you very much. I think both sides put their useful arguments in this case, or in these consolidated cases. Oberdorfer v. Bureau of Land Management and Western Radio Services v. United States Forest Service are both now submitted for decision. We've got one last case on the argument calendar this morning, and I may be mispronouncing the name, Melescu v. Merrillville Nursing Home.
judges: Fletcher W. , Bea, Ikuta